# EXHIBIT 60

```
------------------------------------------------------------x
                                                            :
In the Matter of a Pending Arbitration Between              :
                                                            :
PEARL SEAS CRUISES, LLC,                                    :
                                                            :
                as Owner,                                   :
                                                            :
            and                                             :   DECLARATION OF JOHN
                                                            :   WOMACK REGARDING THE
IRVING SHIPBUILDING INC.                                    :   FEBRUARY AND MARCH 2010
                                                            :   INSPECTIONS AND REPAIRS
                as Builder.                                 :   TO THE PEARL MIST
                                                            :
Arising out of Contract for Construction and                :
Sale of a Passenger Cruise Ship (Hull No. 92)               :
                                                            :
------------------------------------------------------------X
```

1. I am a naval architect and marine engineer with Chesapeake Shipbuilding, and submit this declaration on behalf of Pearl Seas Cruises ("PSC") to summarize recent inspections and work I witnessed being performed on the Vessel by Irving Shipbuilding, Inc. ("ISI") in March 2010 and the Vessel's continuing deficiencies despite such repairs, and to submit two reports describing the hundreds of deficiencies that Lloyd's has required ISI to repair and the numerous pending deficiencies that Lloyd's is still reviewing.

### March 2010 Inspection and Repair Work

2. By a letter emailed to PSC in the afternoon of February 24, 2010, ISI stated that it would be beginning inspection and repair work on the fire boundaries of the Vessel the next day, under the supervision of Simon Grice of Lloyd's Register ("Lloyd's"). That letter is annexed hereto as **Exhibit A.**

3. PSC asked me to travel immediately to Shelburne, Nova Scotia to observe that work. I did so, and observed inspections and work performed by ISI on the Vessel from March 1 - 5 and March 8 - 9, 2010. I represented PSC and my role was solely to observe the scope of the repairs and report to PSC. John Hunter of PSC arrived in Shelburne on March 17, 2010. In

addition to workers, some of whom were employed by outside subcontractors, ISI was represented by Colin Johns and Doug Graham. Simon Grice of Lloyd's was on site for six days and one other representative of Lloyd's was on site for one day to observe and approve inspections and repairs on the Vessel. Bud Streeter of Lloyd's was not present.

4. Although ISI's letter to PSC stated only that it would be performing fire boundary work, Lloyd's review and ISI's repairs included many other areas as discussed below.

5. ISI, Lloyd's representatives and I performed a joint survey of the Vessel limited to selected parts of the Vessel. ISI and Lloyd's had already begun that review before I arrived. ISI prepared a list of defects which it has not been provided to me.

6. I have prepared (1) an updated version of my previously submitted comprehensive report of deficiencies found on the Vessel since 2009, entitled "Summary of Major SOLAS/Classification Deficiencies Discovered Since the Pearl Mist Was Presented for Delivery in June 2009," dated March 23, 2010, which is annexed hereto as **Exhibit B**; (2) a report dated March 22, 2010, entitled "Partial List Major SOLAS/Classification Deficiencies Discovered Since the Pearl Mist Was Presented for Delivery in June 2009: Determination of Acceptable Number and Type of Deficiencies Allowed To Be Present By Lloyd's Register on the Delivery of a New Vessel," annexed hereto as **Exhibit C**; and (3) a report detailing the rejection of wiring repairs undertaken by ISI as a result of the March 2010 inspections, entitled "SOLAS Cable Fire Boundary Penetrations and Wiring Deficiencies: Repairs Undertaken by Irving Shipbuildling Being Inspected By Lloyd's Register Not Approved by Pearl Seas," dated March 19, 2010, which is annexed hereto as **Exhibit D**.

### Fire Boundary Repairs

7. Lloyd's identified deficiencies and ordered corrective action at fire boundary wire penetrations. See generally Ex. D. Nevertheless, as discussed below, ISI's attempted corrective action is still insufficient and is inconsistent with class requirements, SOLAS, the Contract Specifications, and good shipbuilding practices.

8. Within inner cables, sleeves and caulking provide critical fire protection. The RISE sleeves for individual cables and accompanying sealant required in the RISE installation expand

6585017.7                                  2

when exposed to heat or fire, providing thermal protection. Contract Specification 8260 requires RISE or comparable sleeves at fire boundary wire penetrations. See Ex. D, p. 7 (diagram of RISE installation); Ex. B, p. 3, 13 (RISE installation specifications required).

9. The corrective action ordered by Lloyd's and ISI's attempted repair at structural fire boundary electrical wireway penetrations throughout the Vessel failed to correct deficiencies because: (1) packing sleeves, which provide a several millimeter separation between cables, are not visible and therefore cannot be verified as being installed; and (2) fire caulking was not fully placed between inner cables in wireways. See Ex. D, pp. 2-5.

### Numerous Other Corrective Actions Ordered By Lloyd's

10. I also observed that Lloyd's identified numerous other deficiencies in the Vessel and ordered corrective action be taken by ISI for deficiencies that Lloyd's had previously overlooked and which I identified in my testimony before the arbitration panel in February 2010 and accompanying reports.

11. The March 2010 inspection identified more than 250 instances of loose and unsecured wires, which will present a serious shock and fire hazard when the wire coatings are worn away due to chafing, leaving the wires exposed. Lloyd's required wires lying loose over long distances to be secured, but allowed wires to continue to lay in ceiling grids, to lie on top of toilet module and stateroom ceilings, to be draped over pipes and ducts, rather than requiring them to be secured in wireways free and clear of all piping, ducting, and structure as is required by SOLAS rules. See generally Ex. D; see also Ex. B, p. 3-8; Ex. C, p. 6-10.

12. The March 2010 inspection identified 150 areas in joiner ceiling support structure and several joiner bulkhead penetrations where electrical wires are rubbing or pinched on sharp edges or cutouts and are already chafing. See Ex. B, p. 8. Lloyd's ordered that wires found to be chafing to be rerouted and protected with remedies such as taped-on rubber sleeves. Id. However, Class and SOLAS rules require correctly sized routes and chafing grommets. Id. Lloyd's remedy also fails to address the fact that sharp edges will cause *future* chafing and must therefore be remedied now.

13. Lloyd's ordered corrective actions to remedy <u>hundreds</u> of deficiencies throughout the Vessel, including: GFI (ground fault interrupter) receptacles not fitted with junction boxes, and with exposed live terminals; electrical cable dead ends; damaged electrical cables; deficient fire deck penetrations by plastic and copper pipes, toilet and shower module pipes, and stateroom toilets; miscellaneous deficient B-class fire penetrations; deficient fire hose and extinguisher boxes; B-class fire ceiling gaps at HVAC fancoil units; B-class fire bulkhead gaps at structural brackets; and gaps in accommodation space fire draft stops. See generally Ex. B and C.

### Deficiencies For Which Lloyd's Did Not Order Corrective Action

14. Nevertheless, Lloyd's failed to order corrective action for <u>numerous</u> issues that have been and continue to be unacceptable and rejected by PSC. See generally Ex. B and C.

15. In addition, in more than 50 places on the Vessel, electrical cables were secured to piping, ventilation ducts, or joiner/ceiling supports with narrow 1/8" metal banding instead of being run in proper wireways and attached with wider banding to reduce the risk of future chafing. See Ex. D, pp. 8-10. Lloyd's did not order corrective action for this issue. Id.

### Deficiencies Still Under Review by Lloyd's

16. At a meeting on March 9, Simon Grice, Colin Johns and I reviewed my February 19th report on the Vessel and identified <u>numerous</u> outstanding deficiencies that Lloyd's is still reviewing. These include deficiencies in: B-class fire ceiling lighting fixture penetrations; in corridor B-class fire bulkheads and continuous ceilings; in exterior ventilation louvers and dampers; in fire door threshold heights; in forward stairway landing clear widths; in forward stairway center handrail newel post locations; in corridor searails and stairway center handrails; in amidships and forward stairway run-rise and tread dimensions, handrail continuity, and handrail obstructions; in high-fog fire suppression system section stop-valves; in main engine and genset seawater hose connections; in main engine and genset individual fuel return line shutoffs; in main engine and genset fuel return line flanges over engines. PSC has also asked Lloyd's to review the crude wooden stairwell installed by ISI as a corrective measure at the port aft weathertight door. See generally Ex. B and C.

17. Further deficiencies were apparent in photographs of the March 2010 inspections,

and, to my knowledge, have not yet been reviewed by Lloyd's. PSC has also requested a paint log to demonstrate that the paint repairs were performed correctly.

### Additional Repair Work

18. Finally, ISI performed additional work that was not, to my knowledge, ordered or being reviewed by Lloyd's. For example, ISI installed new 3/4" piping for the HVAC drainage systems. ISI is also replacing the coil-style copper piping HVAC drain traps with plastic tubing P-traps. However, ISI has stated that ISI only plans to insulate the copper piping condensate lines in the drain pans, and not in other locations, such as behind joiner panels.

### Status of Lloyd's Inspection

19. I understand that Colin Johns stated to John Hunter that Lloyd's will return for an inspection once the hundreds of repairs that Lloyd's has required (and, I assume, any further repairs that Lloyd's orders after it completes its review of still-pending issues) are completed by ISI.

### Conclusion

20. ISI's recent repairs do not fully address the deficiencies I identified in reports and in my testimony before the arbitration panel in February 2010. In my opinion, the remaining deficiencies are inconsistent with class and SOLAS rules, the Contract Specifications and universally-accepted good shipbuilding practices, and may not be acceptable to the Marshall Islands and the United States Coast Guard.

21. Furthermore, the scope of corrective actions ordered by Lloyd's, and the scope of issues now under consideration by Lloyd's, for many conditions that were present during previous inspections, indicates that Lloyd's previous review of the Vessel was extremely deficient.

Pursuant to 28 U.S.C. § 1746, I declare under penalties of perjury that the foregoing Declaration is true and correct.

Date: March 24, 2010

John Womack